UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
STERLING MORRISON,

                Plaintiff,

-against-                                                  NOT FOR PUBLICATION
                                                        MEMORANDUM AND
                                                        ORDER
MICHAEL J. ASTRUE,                              08-cv-2048 (CBA)
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
-----------------------------------------------------------------x
AMON, United States District Judge:

      Claimant Sterling Morrison ("Morrison" or "plaintiff") appeals to this Court the decision issued by Administrative Law Judge Ronald R. Bosch (the "ALJ") on August 16, 2006, finding him capable of performing sedentary exertion prior to January 1, 1995, and therefore not disabled prior to that date. Claimant filed an application for Title II Disability Insurance Benefits on April 15, 2005, claiming an alleged onset date of June 1, 1991. Claimant's disability insurance expired on December 31, 1994, and thus for claimant to receive benefits under the act, he must be found to have been disabled prior to that date. The decision of the ALJ became a final decision of the Commissioner of Social Security (the "Commissioner") when the Appeals Council denied plaintiff's request for review on March 19, 2008. The present *pro se* appeal followed. Defendant submitted a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). For the reasons stated below, the Court denies defendant's motion, reverses the Commissioner's decision, and remands the case to the Commissioner for further consideration in light of the following discussion.

## BACKGROUND

*A. Medical Evidence*

Plaintiff was hospitalized on December 15, 1993 due to complaints of nausea, vomiting, abdominal pain, shortness of breath, polydipsia and polyuria. Plaintiff was diagnosed with new onset of diabetes mellitus. Medical staff also noted symptoms of hypertension and alcohol withdrawal. Plaintiff stated that he had a history of alcohol abuse for thirty years but had stopped drinking two weeks earlier. Plaintiff's blood glucose levels and liver enzymes were elevated, and he was treated with insulin for two days. Medical staff noted that plaintiff was responding well to insulin. After discontinuing insulin, plaintiff was provided with oral medications, and started diabetes class on December 17, 1993. Plaintiff was taught diabetic self-management, and his hypertension and blood glucose levels were brought under control. Plaintiff was discharged on December 30, 1993.

As early as January 1994, plaintiff, a Vietnam War veteran, was apparently scheduled to undergo treatment for post-traumatic stress disorder ("PTSD"). Progress notes from the Veterans Administration Medical Center in Brooklyn, however, show that plaintiff failed to attend any of his scheduled appointments at the PTSD Clinic, including appointments scheduled for January 4, January 26, February 15, February 16, and March 15, 1994. Records from 1994 also show that plaintiff was evaluated for complaints of a swollen left testicle.

After December 31, 1994, the date plaintiff was last insured for disability insurance benefits, his condition substantially worsened. Plaintiff was diagnosed with multiple medical conditions during that period, including right hydrocelectomy, peripheral polyneropathy, motor neuropathy, nonischemic cardiomyopathy, and acute pancreatitis. Plaintiff was hospitalized in September 2001 for uncontrolled diabetes. In August 2003, he was diagnosed with throat cancer,

requiring resection of his left tonsil and left neck dissection.

Beginning on January 8, 2002, plaintiff was treated for PTSD and adjustment disorder by Dr. Herbert Stein. According to a Psychiatric/Psychological Impairment Questionnaire prepared by Dr. Stein, plaintiff exhibited positive clinical findings, including sleep disturbance, mood disturbance, pervasive loss of interests, social withdrawal or isolation, decreased energy, and intrusive recollections of a traumatic experience. Dr. Stein noted moderate limitations in the ability to perform activities within a schedule, the ability to maintain regular attendance and be punctual within customary tolerance, and the ability to travel to unfamiliar places or use public transportation, as well as mild limitations in the ability to work in coordination with or proximity to others without being distracted by them and in the ability to accept instructions and respond appropriately to criticism from supervisors. In response to the question, "what is the earliest date that the description of symptoms and limitations in this questionnaire applies," Dr. Stein writes, "9/01 (to this degree)."

*B. Plaintiff's Testimony*

Plaintiff testified before the ALJ on August 1, 2006. Plaintiff reported past relevant work history as a sanitation worker for the Department of Sanitation from 1986 to 1991, and as a roofer and a self-employed house painter. Plaintiff stated that he stopped working in 1991 because, "[he] had trouble with [his] diabetes and PTSD." Plaintiff complained of weakness, fever, thirstiness, and double vision. He stated that he had trouble walking and that his sense of balance was off. With regard to his PTSD, he testified about its effect prior to 1994 as follows:

> PTSD hit me very strange. I had nightmares, sometimes I get lonely, I got, I get lonesome sometimes. I think about some of the old, some of the, you know, the guys that was, I was in the war with. And it's, it's, it had me crying sometimes. And I felt very, very, you know, like down and out. I, the PTSD started me drinking and I just, I stayed in most of the time. I didn't, wasn't around a lot of

people. I got so conversations didn't, I didn't like conversations. People, a lot of people would question me about things. A lot of people know I was in the war, so they would come and ask me this and that and it just got to me. And I couldn't handle it too much more."

Plaintiff testified that he had, "very rough problems sleeping," that he had frequent nightmares, that he had anger issues, and that he developed what he describes as a "lonesome attitude," where he, "didn't want to be bothered."

*C. Decision of the ALJ*

The ALJ followed the five step sequential evaluation established by the social security administration. The ALJ found that the plaintiff had not engaged in substantial gainful activity at any time since June 1, 1991, and that he met the special earnings requirements for Title II purposes through December 31, 1994. The ALJ found that prior to the expiration of his disability insurance on December 31, 1994, the plaintiff suffered from severe impairments including diabetes, hypertension, and PTSD. The ALJ held that none of the plaintiff's conditions met the criteria of the relevant medical impairments listed in Appendix 1 to 20 C.F.R. Supbart P of the Social Security regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d). At the fourth step, the ALJ found that prior to December 31, 1994, plaintiff was able to satisfy the demands of sedentary exertion, compatible with his history of hypertension and diabetes. The ALJ held that based on that level, plaintiff was unable to resume any of his prior jobs, but found at the fifth level that claimant's vocational profile directed a finding of not disabled.

With respect to plaintiff's PTSD, the ALJ found that, plaintiff, "probably did suffer from symptoms related to PTSD prior to December 1994, given his combat duty in Vietnam," but notes that, "there is little to document the extent of his psychiatric limitations on or by December 31, 1994." The ALJ argues that, "even Dr. Stein opined that the earliest date of the claimant's

4

symptoms and limitations was September 2001," seven years after his disability insurance expired. As for plaintiff's subjective complaints, the ALJ states that plaintiff's psychiatric symptoms dated back to his combat service in Vietnam, but notes that "claimant had nevertheless been able to work as a laborer, a roofer and a sanitation worker, and his earnings were both substantial and gainful from 1986 [through] 1989." The ALJ explains that at the hearing, plaintiff had stated he had missed his PTSD appointments in 1994 because of his treatment for diabetes, but that there is little record of plaintiff's treatment in 1994. The ALJ argues that the fact that plaintiff did not begin treatment with Dr. Stein until 2002 also speaks to the lack of severity of his PTSD symptoms.

DISCUSSION

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine whether it was supported by substantial evidence in the record as a whole or was based upon an erroneous legal standard." Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir.1998); Beauvoir v. Chater, 104 F.3d 1432, 1433 (2d Cir.1997); Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir.1987). Where there is reasonable doubt as to the Commissioner's application of the correct legal standards, even if the Commissioner's decision is arguably supported by substantial evidence, the Court cannot affirm that decision. Johnson, 817 F.2d at 986. If the correct legal standard was applied and substantial evidence supports the Commissioner's decision, then the Court must affirm the final decision. See Perez v. Chater, 77 F.3d 41, 46 (2d Cir.1996) (citing 42 U.S.C. § 405(g)); Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

Substantial evidence is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). It is not for the Court to determine de novo

5

whether a claimant is disabled. Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams v. Bowen, 859 F.2d 255, 256 (2d Cir.1988).

The Commissioner uses a five-step analysis to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. The Commissioner first determines whether the claimant is working; if he is engaging in substantial gainful activity, the claim will be denied without consideration of any medical evidence. 20 C.F.R. § 404.1520(a)(4) (i), 404.1520(b). If the claimant is not working, the Commissioner determines whether the claimant has a severe impairment which significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c). If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 to 20 C.F.R. Supbart P of the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d). Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity ("RFC") to perform his past work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(e)-(f), 404.1560(b). The claimant bears the burden of proving that he cannot return to his former type of work. Melville v. Apfel, 198 F.3d 45, 51 (2d Cir.1999); Diaz v. Shalala, 59 F.3d 307, 315 (2d Cir.1995). If the claimant's RFC does not permit him to engage in his prior work, the fifth and final step requires the Commissioner to determine whether the claimant, in light of his RFC, age, education, and work experience, has the capacity to perform "alternative occupations available in the national economy." See Decker v. Harris, 647 F.2d 291, 298 (2d Cir.1981); 20 C.F.R. §§ 404.1520(a) (4)(v), 404.1520(g). If he cannot, benefits

are awarded. Dixon v. Heckler, 785 F.2d 1102, 1103 (2d Cir.1986).

### A. The ALJ Failed to Adequately Assess Plaintiff's Subjective Complaints Regarding His PTSD

"In determining whether a claimant is disabled, the Commissioner is required to consider all of the claimant's symptoms, including subjective complaints . . . ." McCarthy v. Astrue, No. 07 Civ. 0300(JCF), 2007 WL 4444976, at *8 (S.D.N.Y. Dec. 18, 2007). Section 416.929(c)(3) of Title 20 of the C.F.R., as interpreted in SSR 96-7p, requires an ALJ to follow a two-step process to evaluate a plaintiff's testimony regarding his symptoms. First, "the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment(s) . . . that could reasonably be expected to produce the individual's . . . symptoms . . . ." SSR 96-7p. Second, "the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities . . . ." Id.[1]

An ALJ's finding that a witness lacks credibility must be "set forth with sufficient specificity to permit intelligible plenary review of the record." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 261 (2d Cir.1988); see also Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984) ("[A]ny determination must be set forth with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence."). The ALJ must "mak[e] clear, both to the individual and to any subsequent reviewers, the weight [he] gave the claimant's statements and the reasons for that weight." Snyder v. Barnhart, 323 F. Supp. 2d 542, 547

---

[1] The kinds of evidence the ALJ will consider in conducting his analysis include: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Id. at *2-3.

(S.D.N.Y.2004); see also Matejka v. Barnhart, 386 F. Supp. 2d 198, 205 (W.D.N.Y. 2005) ("In assessing the claimant's credibility, the ALJ must consider all of the evidence in the record and give specific reasons for the weight accorded to the claimant's testimony.").

In this case, the ALJ fails to explain his assessment of the plaintiff's subjective complaints regarding his PTSD with the specificity required to determine whether it was supported by substantial evidence. The ALJ nowhere addresses whether plaintiff's PTSD could reasonably be expected to produce the symptoms complained of by the plaintiff, as required at the first step, instead stating generally that, "while the claimant's PTSD may have been disabling in 2002, there is nothing in the record to establish that it was prior thereto." Moreover, the only specific reason the ALJ gives for discounting the plaintiff's testimony with respect to his PTSD is that despite subjective complaints regarding PTSD dating back to his combat service in Vietnam, "the claimant had nevertheless been able to work as a laborer, a roofer and as a sanitation worker . . . from 1986 [through] 1989." The fact that the plaintiff was able to work during a period preceding his claimed onset of disability, however, does not imply that his symptoms could not have subsequently worsened to the point that they became disabling. The ALJ also notes that plaintiff made his subjective complaints well after his disability insurance expired, but that fact alone does not imply that such statements are necessarily unreliable.

Moreover, although there are no contemporaneous medical records discussing the severity of the plaintiff's psychiatric symptoms prior to January 1, 1995, there are records that appear to be consistent with the plaintiff's subjective complaints. Plaintiff was scheduled for treatment for PTSD as early as 1994. His failure to attend such sessions might in fact be consistent with his subjective complaints. Plaintiff has complained, for example, that he avoids "thoughts, feelings, and conversations as well as activities, places and people that arouse recollection of [his] trauma,"

8

(Tr. 225), and Dr. Stein has opined that he suffers from social withdrawal/isolation. Additionally, when plaintiff finally did obtain treatment beginning in 2002, such records are consistent with symptoms dating back to 1994 and earlier. A report contained in the VA records on the plaintiff's initial evaluation for post-traumatic stress disorder conducted in September 2002 by Dr. Paul Leibman states that the plaintiff's "interpersonal interactions are characterized by chronic irritability and significant anxiety especially when exposed to crowded or noisy situations." The report clarifies that the plaintiff has, "serious social and occupational impairments secondary to [his] chronic post-traumatic stress disorder." Under the heading, "Medical and Occupational History," the report states that Morrison, "had significant difficulties performing his occupational duty [as a sanitation worker due] to interpersonal conflicts secondary to PTSD." And in describing the frequency, severity and duration of his psychiatric symptoms, the report indicates that the, "[p]sychiatric symptoms are chronic and serious in intensity and date back to his combat service in Vietnam." (Tr. 225.)

The ALJ references the opinion of Dr. Stein, stating that, "Dr. Stein opined that the earliest date of the claimant's symptoms and limitations was September 2001." However, even Dr. Stein's opinion is consistent with plaintiff's subjective complaints. Dr. Stein clarifies that his reference to September 2001 only reflects symptoms, "to this degree," and therefore suggests that plaintiff might very well have experienced arguably less severe symptoms dating back to the period in question. The ALJ in fact acknowledges that plaintiff, "probably did suffer from symptoms related to PTSD prior to December 1994."

A more detailed analysis of the plaintiff's credibility is therefore required for the Court to determine whether the ALJ's opinion was supported by substantial evidence. Consistent with Section 416.929(c)(3) of Title 20 of the C.F.R., as interpreted in SSR 96-7p, the ALJ should make

9

reference to whether the plaintiff's PTSD could reasonably be expected to produce symptoms such as those described by the plaintiff from the period between June 1, 1991 and December 31, 1994, and set forth with specificity the basis for its credibility determination.

### B. The ALJ Failed to Comply with SSR 83-20 in Determining that Plaintiff's PTSD Was Not Disabling Prior to January 1, 1995.

The ALJ's failure to adequately assess Morrison's credibility with respect to his PTSD is particularly significant in light of SSR 83-20, which sets forth specific procedures to follow to determine the date of onset. SSR 83-20 applies to cases that require the ALJ to determine when the claimant first became disabled, and is binding on the Commissioner. See Talanker v. Barnhart, 487 F. Supp. 2d 149, 156 (E.D.N.Y. 2007). SSR 83-20 states, in part:

> With slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling. Determining the proper onset date is particularly difficult, when for example, the alleged onset and the date last worked are far in the past and adequate medical records are not available. In such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process.

The ALJ will look to medical evidence, but may also consider other sources of documentation, such as information obtained from family members, friends, and former employers. SSR 83-20. "The starting point in determining the date of onset of disability is the individual's statement as to when disability began," and, "[t]he day the impairment caused the individual to stop work is frequently of great significance in selecting the proper onset date." SSR 83-20.

Here, the ALJ states that, "claimant's PTSD may have been disabling in 2002," but contends that, "there is nothing in the record to establish that it was prior thereoto." However, "the absence of contemporaneous medical records does not preclude a finding that claimant was disabled prior to the expiration of insured status. Rather, onset of disability may be inferred in

10

accordance with the criteria set forth in SRR 83-20." Manago v. Barnhart, 321 F. Supp. 2d 559, 569 (E.D.N.Y. 2004). As stated, there was in fact evidence in the record consistent with Morrison's subjective complaints about PTSD dating back to the relevant period. Moreover, under SSR 83-20, the ALJ should himself have further developed the record, either by calling a medical witness who might assess the likely course of the plaintiff's disease, Parmenter v. Astrue, No. 08-CV-1132 (TJM/VEB), 2010 WL 2884866, at *5 (N.D.N.Y. April 23, 2010) ("While SSR 83-20 does not mandate that a medical advisor be called in every case, courts have construed this step to be essential when the record is ambiguous regarding onset date." (citation and internal quotations omitted)), or by calling other witnesses, such as friends or family members, who could testify as to the progression of the plaintiff's psychological problems. See Martinez v. Barnhart, 262 F. Supp. 2d 40, 47 (W.D.N.Y. 2003) ("[I]n the absence of medical evidence, the ALJ should have solicited other evidence from plaintiff's family, friends or other lay witnesses regarding plaintiff's condition during the relevant time period."). To the extent the ALJ relied on the statement of Dr. Stein, such reliance is based on a mischaracterization of that statement.

The ALJ's failure to follow SSR 83-20 to infer the onset of a claimant's disability is grounds for remand if the ALJ's finding is not otherwise supported by substantial evidence. See, e.g., Caputo v. Astrue, No. 07-CV-3992 (DLI)(JO), 2010 WL 3924676, at *3 (E.D.N.Y. Sept. 29, 2010); Martinez v. Barnhart, 262 F. Supp. 2d 40, 44 (W.D.N.Y.2003) (remanding where the ALJ failed to apply SSR 83-20 and instead "summarily conclud[ed]" that plaintiff's allegations regarding his symptoms and onset date were insufficient to support a finding of disability). Remand may be appropriate even if there are not contemporaneous medical records available to support plaintiff's allegations. See Parmenter, 2010 WL 2884866, at *5 (finding ALJ's "narrow focus on the lack of medical records" inconsistent with SSR 83-20); Manago, 321 F. Supp. 2d at

11

569. Accordingly, remand for further development of the record in light of SSR 83-20 is appropriate.

## CONCLUSION

For the reasons stated, defendant's motion for judgment on the pleadings is denied. Pursuant to the fourth sentence of 42 U.S.C. § 405(g), the Commissioner's decision is reversed, and plaintiff's claim is remanded for further administrative proceedings consistent with this opinion. The Clerk of the Court is directed to enter judgment in accordance with this Order.

SO ORDERED.

Dated: Brooklyn, New York
October 27, 2010

/Signed by Judge Amon/

Carol Bagley Amon
United States District Judge